# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| GERALD JOHNSTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:20-cv-01103-TWP-DML |
| | ) |
| TROY DOLLERIS, Jail Commander, Washington Co. Detention Center, ROGER NEWLON, BRENT MILLER, Sheriff, Washington Co. Sheriff's Department, JOSEPH RICHARDSON, Capt., Washington Co. Sheriff's Department, JOHN K. PHILLIPS, Correctional Officer, Washington Co. Sheriff's Department, AUSTIN LANGFORD, Correctional Officer, Washington Co. Sheriff's Department, and MIKE PELAYO, | ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

## ENTRY GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF EXHAUSTION

This matter is before the Court on a Motion for Summary Judgment filed by Defendants Troy Dolleris ("Commander Dolleris"), Roger Newlon ("Sheriff Newlon"), Brent Miller ("Sheriff Miller"), Joseph Richardson ("Captain Richardson"), John K. Phillips ("Officer"), and Austin Langford ("Officer Langford"), (collectively "the Defendants") (Dkt. 30). Defendant Mike Pelayo ("Nurse Pelayo") joined in the defendants' Motion for Summary Judgment on December 8, 2020, (Dkt 38). Plaintiff Gerald Johnston, ("Mr. Johnston"), initiated this action alleging civil rights violations pursuant to 42 U.S.C. § 1983. The Defendants seek resolution of the claims against them on the basis that Mr. Johnston failed to exhaust his available administrative remedies before filing this action. The Motion is fully briefed and ready for resolution. For the reasons explained in this Entry, the Defendants' Motion for Summary Judgment is **granted in part and denied in part.**

## I. BACKGROUND

Plaintiff Gerald Johnston, an inmate currently confined at the Plainfield Correctional Facility, filed this civil rights action on April 9, 2020. The alleged events occurred when he was confined at the Washington County Detention Center ("the Jail"). Upon Mr. Johnston's arrival at the Jail on or about May 9, 2018, he informed custody staff and Nurse Bowles that he had chronic health conditions for which he required a daily medication, Lisinopril, and he also had an infection in his left foot. He was placed in an extremely unsanitary holding cell. He asked staff for treatment and medications every day but was told to "fill out a healthcare slip". He had no access to the forms and no writing utensils so he could not fill out any forms. Seven days later, after he complained of dizziness and shortness of breath and was visibly distraught, Captain Richardson ordered him to be stripped naked and placed in a solitary padded isolation cell where he stayed for approximately 15 days. Seven days into the confinement in the isolation cell, Nurse Bowles came in to see him. Nurse Mike Pelayo[1] ("Nurse Pelayo"), had previously refused to provide Mr. Johnston treatment. Nurse Bowles told Officer Langford to dress Mr. Johnston and return him to a population setting after seeing that he received his blood pressure medications. Officer Langford gave Mr. Johnston his clothes but put him back into the padded cell in isolation. Mr. Johnston became very distraught and after 20 minutes Officer Langford returned with Officer Phillips. They opened the cell and took Mr. Johnston by both arms using excessive force that caused extreme pain. When he began to scream in pain, they threw him down and slammed the door. Mr. Johnston suffered a bruised and swollen left arm. At the time when he filed his Amended Complaint, he still

---

[1] Defendants reported to the Court that they were unaware of a "Mike Bowles" who worked as a nurse at the Jail during the period of Mr. Johnston's incarceration and suggested that a "Mike Pelayo" may have worked there as a nurse when Mr. Johnston was incarcerated. (Dkt. 29.) Mike Pelayo was substituted for "Mike Bowles" who was originally named in the Amended Complaint on November 20, 2020. (Dkt. 35.)

2

had limited mobility and pain in his left arm and shoulder. Commander Dolleris and Sheriffs Newlon and Miller learned about the incident but provided no medical attention. (Dkt 21 at 4-8.)

After screening his Amended Complaint, the Court determined that the following claims should proceed. (*See* Dkt. 22.) The claim that after Mr. Johnston complained of feeling dizzy and short of breath, Captain Richardson ordered that Mr. Johnston be stripped naked and placed in a solitary padded cell for days shall proceed. The claims of excessive force brought against Officers Langford and Phillips shall proceed. The claims that Commander Dolleris and Sheriffs Newlon and Miller were aware of Mr. Johnston's injuries after the use of force but failed to provide him medical attention shall proceed. And the claim that Nurse Bowles (now substituted as Nurse Pelayo) refused to provide him medical treatment shall proceed. (Dkt 22 at 3.) These incidents all occurred in May 2018.

## II. LEGAL STANDARDS

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). "Material facts are those that might affect the outcome of the suit under applicable substantive law." *Dawson v. Brown,* 803 F.3d 829, 833 (7th Cir. 2015) (internal quotation omitted). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *See Barbera v. Pearson Educ., Inc.,* 906 F.3d 621, 628 (7th Cir. 2018).

The substantive law applicable to the motion for summary judgment is the Prison Litigation Reform Act ("PLRA"), which requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted).

"State law establishes the administrative remedies that a state prisoner must exhaust for purposes of the PLRA." *Lanaghan v. Koch,* 902 F.3d 683, 687 (7th Cir. 2018). "Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015); *see also Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006).

### III.  DISCUSSION

#### A.  Undisputed Facts

The Jail has a grievance process which is set forth in the Inmate Handbook Rules of Conduct. (Dkt. 31-2 at 7) (hereinafter "Grievance Process"). The Grievance Process was in effect during Mr. Johnston's incarceration at the Jail, which was from May 9, 2018 until May 20, 2019. (Dkt. 42 at 3.)

Inmates are permitted to file grievances about their treatment as inmates, including the conditions in the Jail. (Dkt. 31-2 at 7.) The Grievance Process provides that there is a separate and distinct form used for grievances. *Id.* The forms are found on the kiosks. *Id.* Inmates have access to kiosks through which they can electronically file grievances, non-grievance communications, medical requests, and visitation scheduling, among other things. (Dkt. 42 at 3.)

Inmates are provided with an electronic copy of the Inmate Handbook containing the Grievance process and are required to read it before using the kiosk system. *Id.*

Once a grievance is filed at a kiosk, an electronic notice of it is sent automatically to supervisory personnel at the Jail. *Id.* at 4. The supervisory personnel must investigate and respond in writing within 10 business days. *Id.* The responses are sent electronically to the inmate using the kiosk system. *Id.* If the grievant is dissatisfied with the initial disposition of the grievance, he may appeal to the next higher level of command and ultimately to the Jail Commander and/or Sheriff, using the kiosk system. *Id.* Once the Sheriff or Jail Commander has rendered a decision on the grievance being appealed, the inmate has exhausted the Grievance Process. *Id.* The Grievance Process does not impose a deadline by which a grievance must be filed after any particular incident.

From May 9 through May 23, 2018, Mr. Johnston was kept in isolation without access to a kiosk. (Dkt. 44 at 2, 3.)[2] He did not have access to the kiosk until September 9, 2018. *Id.* at 4.[3] He filed 11 grievances from September 2018 through March 2019. Mr. Johnston submitted grievances in September, October, and November 2018 asking for treatment for his arm that he alleges was "hurt 5 months ago" in the padded cell. (Dkt. 47-2 at 2-6.)

**B.    Discussion**

The undisputed record reflects that Mr. Johnston was aware of the Grievance Process while at the Jail. He submitted a number of grievances using the kiosk. The Defendants contend that none of them related to his allegations of excessive force or denial of medical treatment for injuries

---

[2] Defendants contend that Mr. Johnston could have asked for a paper grievance to fill out under the supervision of Jail personnel while he was in segregation, (Dkt. 47-1 at 3), but this option is not set forth in the two paragraph Grievance Process, (Dkt. 31-2 at 7).

[3] Defendants dispute that Mr. Johnston lacked access to a kiosk until September 9, 2018, but this is not a material disputed fact because there was no deadline by which Mr. Johnston had to submit a grievance.

incurred as a result of excessive force. (Dkt. 47-1 at 3.) Mr. Johnston, however, contends and the Court agrees that the grievances in which he asked for treatment for his arm sufficiently put the Jail on notice that his arm was hurt while in the padded cell at the approximate time that he alleged excessive force. (Dkt. 48.) His grievances seeking medical attention for his arm are dated September 9, October 10, and November 7, 2018. (Dkt. 47-2 at 2-6.) The single record of any response to those grievances was dated September 11, 2018, stating, "Let me look into this and if I need to get you somewhere, I [sic] get it done." *Id.* at 3. These grievances put Jail staff on notice that Mr. Johnston was seeking and being denied medical treatment for injuries he sustained approximately five months earlier.

Defendants did not acknowledge the grievances that related to medical care. They have thereby also failed to argue that Mr. Johnston did not appeal any response he received to those grievances. In addition, as noted above, the Defendants have not presented evidence of any responses to Mr. Johnston's October and November 2018 grievances related to medical treatment for his arm. Nor does the Grievance Process provide any direction for how an inmate should proceed if no response is received.

Defendants have met their burden of showing that Mr. Johnston failed to invoke the Grievance Process as to his claim of being placed in a solitary padded cell and his claim of excessive force. However, Defendants have failed to meet their burden of showing that Mr. Johnston failed to exhaust his claims that he was denied medical treatment for the injuries he sustained as a result of the excessive force. With respect to the medical claims, the undisputed record supports a finding that Mr. Johnston complied with the Grievance Process to the extent it was available to him and no hearing on the issue is warranted.

## IV. CONCLUSION

For the reasons explained above, the Defendants' Motion for Summary Judgment on the issue of exhaustion of administrative remedies, (Dkt. [30]), is **GRANTED in part and DENIED in part.** Mr. Johnston's claims of being placed in a solitary padded cell naked and of excessive force asserted against Defendants Captain Richardson, Officer Phillips, and Officer Langford are **dismissed without prejudice** for failure to exhaust administrative remedies. *See Ford v. Johnson,* 362 F.3d 395, 401 (7th Cir. 2004) (holding that "*all* dismissals under § 1997e(a) should be without prejudice."). **The Clerk shall terminate** Captain Richardson, Officer Phillips, and Officer Langford as Defendants on the docket.

Mr. Johnston's claims that Commander Dolleris, Sheriff Newlon, Sheriff Miller, and Nurse Pelayo were aware of his requests for medical treatment but denied them, **shall proceed on the merits.** A pretrial schedule governing the further development of those claims will issue in a separate Entry.

**SO ORDERED.**

Date: 4/19/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Gerald Johnston, #271526
PLAINFIELD CORRECTIONAL FACILITY
Inmate Mail/Parcels
727 Moon Road
Plainfield, Indiana  46168

Steven D. Groth
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
sgroth@boselaw.com

Stephen C. Keller
SCHILLER BARNES & MALONEY, PLLC
skeller@sbmkylaw.com